OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Defendant-Appellant, William Robinson, appeals the decision of the Jefferson County Court of Common Pleas that found him guilty of one count of drug possession, one count of falsification, and one count of failure to comply with an order or signal of a police officer, with specifications for fleeing immediately after committing a felony and for causing a substantial risk of physical harm to persons or property. Robinson argues that his conviction on those two specifications is against the manifest weight of the evidence.
 {¶ 2} A conviction is against the manifest weight of the evidence if, after examining the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, this court determines that the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The evidence in this case supports the jury's verdict. Accordingly, the trial court's decision is affirmed.
 Facts {¶ 3} In December 2003, Steubenville Police Office Thomas Ellis saw a vehicle stop in the middle of a street to let someone out. Officer Ellis then initiated a traffic stop because the car blocked traffic by stopping in the middle of the street. During the traffic stop, Robinson, the driver, gave the officer a false identity. Officer Ellis proceeded to check that identity. While doing so, he saw a passenger reaching under the seat and ordered that passenger out of the car. As the passenger got out of the car, Officer Ellis remembered Robinson's name and told him so. Robinson then drove off at a high rate of speed. At the end of the road, he ran a stop sign and pulled into an apartment building parking lot. Robinson got out of the car and attempted to run away. Officer Ellis eventually apprehended Robinson after chasing him on foot. After handcuffing Robinson and putting him in the backseat of the cruiser, Officer Ellis removed Robinson's shoes and found cocaine in Robinson's right shoe.
 {¶ 4} The Jefferson County Grand Jury indicted Robinson on one count of drug possession, one count of falsification, and one count of failure to comply with an order or signal of a police officer, with specifications for fleeing immediately after committing a felony and for causing a substantial risk of physical harm to persons or property. The matter eventually proceeded to a jury trial. At the end of that trial the jury found Robinson guilty of all counts. The trial court then sentenced Robinson accordingly.
 Manifest Weight of the Evidence {¶ 5} Robinson argues the following two assignments of error on appeal:
 {¶ 6} "The jury verdict of guilty for the specification that the defendant, after commission of the offense of failure to comply, fled immediately after the commission of a felony was against the manifest weight of the evidence."
 {¶ 7} "The jury verdict of guilty for the specification that the defendant, after commission of the offense of failure to comply, through the operation of a motor vehicle, caused a substantial risk of serious physical harm to person or property was against the manifest weight of the evidence."
 {¶ 8} These assignments of error both challenge the jury's verdict in the same way, by arguing that its decision is against the manifest weight of the evidence. When reviewing whether a conviction was against the manifest weight of the evidence, we must "examine whether the evidence produced at trial `attains the high degree of probative force and certainty required of a criminal conviction.'" State v. Tibbetts,92 Ohio St.3d 146, 163, 2001-Ohio-0132, quoting State v. Getsy,84 Ohio St.3d 180, 193, 1998-Ohio-0533. In order to do this, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. "'Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis sic.) State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-0052, quoting Black's Law Dictionary (6 Ed. 1990) 1594.
 {¶ 9} "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id. at 387, 485, quoting State v.Martin (1983) 20 Ohio App.3d 172, 175. "To reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus.
 {¶ 10} Although Robinson frames each of his assignments of error in terms of his conviction being against the manifest weight of the evidence, he claims that there is no evidence supporting his conviction for either specification. This argument is much more like a sufficiency of the evidence argument than a manifest weight of the evidence argument. Thus, we must clarify that "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." Id. at paragraph two of the syllabus. "Sufficiency of the evidence" is "'a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" Id. at 386, quoting Black's Law Dictionary (6 Ed .1990) 1433. In contrast, a weight of the evidence argument asks this court to examine whether the evidence produced at trial attains the high degree of probative force and certainty required of a criminal conviction. Tibbetts at 163. Defendants must keep this distinction in mind when framing their issues on appeal.
 Fleeing {¶ 11} In his first assignment of error, Robinson contends the jury erroneously found that he fled after committing a felony since there is no evidence that he committed a felony prior to disregarding Officer Ellis's order. He contends the only other felony he committed was a possessory offense and that Officer Ellis did not discover that he had possession of the cocaine until after Robinson failed to comply with his order.
 {¶ 12} In response, the State argues the greater amount of credible evidence supports the jury's conclusion. It directs our attention to Officer Ellis's testimony that he believed Robinson possessed the cocaine when he fled in his vehicle and the circumstances surrounding Officer Ellis's chase of Robinson. The State is correct.
 {¶ 13} The jury found Robinson guilty of failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B). That statute provides:
 {¶ 14} "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop."
 {¶ 15} A violation of this statute is normally a first degree misdemeanor. R.C. 2921.331(C)(3). But if the jury finds that an "offender was fleeing immediately after the commission of a felony" when committing this offense, then this offense becomes a fourth degree felony. R.C.2921.331(C)(4).
 {¶ 16} As stated above, Robinson was convicted of possession of cocaine, a felony offense. The only issue is whether the evidence in the record supports the jury's conclusion that Robinson had possession of the cocaine before he failed to comply with Officer Ellis's order. Officer Ellis testified that, to the best of his knowledge, Robinson had the cocaine in his possession while he was in the car. This belief is supported by the circumstances surrounding the ensuing chase.
 {¶ 17} After Officer Ellis identified Robinson, Robinson put the car into gear and drove to the end of the street at a high rate of speed. At the end of the road, he drove through a stop sign and into an apartment building's parking lot. Robinson stopped in that parking lot and fled on foot into the apartment building. Officer Ellis followed Robinson into the building and saw him knocking on a door. A woman opened the door for Robinson, let him in, and shut the door when she saw Officer Ellis. Officer Ellis began kicking the locked door. Five seconds later, the woman opened the door. Officer Ellis saw that a window was open and the woman told him Robinson fled through the window. Officer Ellis went out the window, saw Robinson outside, and continued to pursue him on foot. When Officer Ellis ran around the corner of the building, he could no longer see Robinson. He went into the first complex and saw Robinson hiding in a corner. He then took Robinson into custody. While Robinson was handcuffed in the back of Officer Ellis's cruiser, he had Robinson take his shoes off and found cocaine in Robinson's right shoe.
 {¶ 18} Robinson is asking us to believe that he somehow obtained possession of the cocaine and placed it within his right shoe while running away from a police officer who was intent on apprehending him. This is an unreasonable construction of the facts. A much more reasonable interpretation of the evidence, and the one reached by both the jury and Officer Ellis, is that Robinson had possession of the cocaine before failing to comply with Officer Ellis's order. The jury's verdict in this regard is not against the manifest weight of the evidence. Robinson's first assignment of error is meritless.
 Substantial Risk of Serious Physical Harm {¶ 19} In his second assignment of error, Robinson argues there is no evidence that supports the jury's conclusion that he caused a substantial risk of serious physical harm to Officer Ellis. He contends that Officer Ellis was beside, rather than in front, of Robinson's car when Robinson drove away and that he did not aim at Officer Ellis as he began to drive away. He further claims there was no traffic, either vehicular or pedestrian, when he drove away.
 {¶ 20} In response, the State claims there is ample evidence supporting this aspect of the jury's verdict. In particular, the State points to Officer Ellis's testimony that Robinson drove away at a high rate of speed when he was only standing ten inches from the vehicle and that Officer Ellis was concerned for his physical safety. It further directs this court to Officer Ellis's testimony that he believed that the people and the property in the parking lot Robinson pulled into were in danger of serious physical harm.
 {¶ 21} R.C. 2921.331 contains other specifications in addition to the one addressed in Robinson's first assignment of error. For instance, if the jury finds that, "the operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property," then the offense is a third degree felony. R.C.2921.331(C)(5)(a)(ii).
 {¶ 22} The Ohio Revised Code defines a "substantial risk" as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). It then defines "serious physical harm to persons" as:
 {¶ 23} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 24} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 25} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 26} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 27} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5).
 {¶ 28} "Serious physical harm to property" is defined as "any physical harm to property that does either of the following:
 {¶ 29} "(a) Results in substantial loss to the value of the property or requires a substantial amount of time, effort, or money to repair or replace;
 {¶ 30} "(b) Temporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time." R.C. 2901.01(A)(6).
 {¶ 31} In this case, Robinson claims that there was not a substantial risk of serious physical harm to persons or property since Officer Ellis was beside the car when he drove off, there was no other traffic in the street, no pedestrians in the street, and no traffic or individuals in the parking lot. Some of these assertions are contrary to the evidence. After all, both Officer Ellis and the passenger who got out of the car were within inches of the car when Robinson began driving away at a high rate of speed. At the end of the road, Robinson tapped his brakes, but did not stop at the stop sign. He then drove straight into a crowded parking lot. The videotape reveals that other cars were driving in the parking lot at that time and that individuals were present in the parking lot.
 {¶ 32} Robinson's actions in this case were similar to the defendant's actions in State v. Love, 9th Dist. No. 21654, 2004-Ohio-1422. In Love, a police officer saw the defendant driving a motor vehicle, peeling its tires, and fishtailing in front of a group of people. The officer activated his overhead lights and siren and followed the defendant, spacing his car two car lengths behind the defendant's car. The defendant failed to stop and proceeded down a road in a densely populated area. On that road, the defendant ran the red light of a major intersection, sped through residential areas down the middle of the road, ran two stop signs, and forced other drivers to pull to the side of the road so that he could speed past while both police cars were in pursuit. The defendant ultimately entered an apartment building's parking, which was effectively a dead end, jumped out of his car with the motor running, left the headlights on and the driver's side door open, and attempted to flee the scene. The defendant was arrested and convicted of a violation of R.C.2921.331(B) and the specification that there was a substantial risk of serious physical harm to persons or property. The appellate court affirmed the conviction.
 {¶ 33} "Our careful review of the record indicates that the State did present ample evidence that Appellant failed to comply with an order or signal of a police officer and created a substantial risk of serious physical harm to persons or property. A jury could reasonably find that speeding through the `Zip Strip' and residential areas adjacent to the University, running stop signs and red lights in the same vicinity, and driving down the middle of the road while police officers were in pursuit with lights and sirens activated created a substantial risk of harm to persons or property and constituted failure to comply with an order or signal of a police officer. A jury could also reasonably find that the failure of Appellant to engage in a `near collision' speaks to nothing more than Appellant's good luck and the careful driving on the part of other motorists on the road; such an assertion is irrelevant to our analysis because it fails to speak to the level of risk that Appellant's reckless driving created. As such, we find that the jury did not lose its way and create a manifest miscarriage of justice when it convicted Appellant of failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331(B), and the enhancement provision of creating a substantial risk of serious physical harm to persons or property pursuant to R.C. 2921.331(C)(5)(a)." Id. at ¶ 19.
 {¶ 34} Although Robinson's actions were not as egregious as the defendant's actions in Love, the fact that he did not nearly collide with someone or something does not end the inquiry in this case. Robinson sped away from two people standing very close to his car. He then drove through a stop sign and into what appears to be a crowded parking lot. There was a distinct chance that he may have caused serious physical harm to either Officer Ellis or Robinson's former passenger. And there is a distinct chance that Robinson may hit and cause serious physical harm to a person or vehicle in the parking lot. Given this evidence, we cannot conclude that the jury clearly lost its way when it found Robinson guilty of this specification. Robinson's second assignment of error is meritless.
 {¶ 35} Robinson challenges the jury's findings making his violation of R.C. 2921.331(B) a felony offense rather than a first degree misdemeanor. But the evidence in the record supports the jury's findings. Accordingly, the judgment of the trial court is affirmed.
Donofrio, P.J., concurs.
Waite, J., concurs.