[Cite as *State v. Glover*, 2017-Ohio-7360.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2016-11-016 |
| Plaintiff-Appellee, | : | O P I N I O N |
| | : | 8/28/2017 |
| - vs - | : | |
| | : | |
| CALVIN DEAN GLOVER, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI 20160109


Jess C. Weade, Fayette County Prosecuting Attorney, John M. Scott, Fayette County Courthouse, 110 East Court Street, Washington C.H., Ohio 43160, for plaintiff-appellee

CiceroAdams, LLC, Jay A. Adams, 36 North Detroit Street, Suite 102, Xenia, Ohio 45385, for defendant-appellant


**M. POWELL, J.**

{¶ 1} Defendant-appellant, Calvin D. Glover, Jr., appeals his convictions and sentence in the Fayette County Court of Common Pleas.

{¶ 2} On May 6, 2016, the Fayette County Grand Jury returned an eleven-count indictment charging Glover with two counts of failure to comply, four counts of aggravated vehicular assault, one count of trafficking in cocaine, one count of trafficking in marijuana,

one count of possession of cocaine, one count of possession of drug paraphernalia, and one count of misdemeanor possession of marijuana. The charges stemmed from a motor vehicle collision that occurred at the intersection of Temple Street and Delaware Street in Washington Court House, Ohio. Glover entered pleas of not guilty to the charges and the case proceeded to a jury trial.

{¶ 3} Washington Court House Police Officer Derek Pfeifer testified on behalf of the state that on April 17, 2016, he observed a white vehicle parked on Temple St. in Washington Court House, Ohio. Pfeifer testified that when he stopped his police cruiser next to the parked white vehicle, it "jumped the sidewalk and the curb * * * t[aking] off east bound on Temple Street at a high rate of speed." Pfeifer characterized the white vehicle's speed as "[e]xtremely excessive and reckless," estimating the speed to be approximately 100 m.p.h. The posted speed limit in the area was 25 m.p.h. Pfeifer gave pursuit, with lights and siren activated. Upon reaching the intersection of Delaware Street and Temple Street, Pfeifer observed that the white vehicle had been involved in a collision with another vehicle. He observed debris in the roadway and the passenger side of the white vehicle pinned against another car parked on the street. The white vehicle was unoccupied and the driver's door was ajar. Pfeifer did not observe anyone exit the white vehicle.

{¶ 4} Jeffery Brown testified that he witnessed the white vehicle strike a dark-colored vehicle at the intersection. Following the collision, he saw a black male exit the driver's door of the white vehicle and run through Brown's yard. Brown did not see the man's face.

{¶ 5} Kelly Suttles also witnessed the collision and identified Glover as the driver and only occupant of the vehicle that caused the collision. Suttles could not initially recall whether the white or dark-colored vehicle caused the collision. However, upon refreshing her recollection, she testified the white vehicle struck the dark-colored vehicle at the intersection. Suttles acknowledged that she is legally night blind, but the area was "sufficiently lit up" to

- 2 -

witness the collision.

{¶ 6}  Keith Benczi testified he also witnessed the collision and identified Glover as the driver of the white vehicle.  Benczi "[g]uaranteed" it was Glover driving the white vehicle and that a white female appeared to be running from the area.  Benczi chased Glover after he exited the white vehicle and began to run from the scene of the accident. Benczi notified police Glover was hiding "underneath some kind of structure behind" a house up the road.  Shortly thereafter, police apprehended Glover from this location.

{¶ 7}  Washington Court House Police Sergeant Russell Lowe testified he received a call following the collision and responded to the scene.  Lowe assisted in locating and apprehending Glover, who was hiding about three to four houses from the intersection where the collision occurred.  Lowe testified he participated in inventorying the contents of the white vehicle and reconstructing the collision.  Lowe discovered two bags of marijuana, scales, small baggies, syringes, approximately $10,000 cash, and crack cocaine.  Based on his training and experience as a detective for 17 years and working as an undercover narcotics officer, Lowe believed the items recovered from the white vehicle to be indicative of the sale of narcotics.

{¶ 8}  Sergeant Todd Oesterle of the Fayette County Sheriff's Office provided expert testimony regarding the traffic crash investigation and reconstruction.  Oesterle testified that based on data downloaded from the airbag control module, it is highly unlikely there were any passengers in the white vehicle at the time of the collision.  At the time of impact, the white vehicle was travelling at 63.4 m.p.h.  Oesterle's investigation of the vehicle itself revealed the driver's seatbelt was the only one in use at the time of the collision.

{¶ 9}  Three of the four occupants of the dark-colored vehicle testified regarding the injuries they sustained from the collision.  These injuries included headaches, bruises, burns, and abrasions requiring stitches.  One occupant sustained two broken vertebrae in his neck,

a severe concussion, and a torn pectoral muscle.

{¶ 10} After the state rested its case-in-chief, Glover moved for acquittal pursuant to Crim.R. 29. The trial court granted Glover's motion with respect to one count of aggravated vehicular assault and denied his motion with respect to the remaining charges.

{¶ 11} King Robert Isaac Dillard testified on behalf of the defense. Dillard testified his mother owned the white vehicle. According to Dillard, he, his mother, Glover, and an unidentified female occupant were travelling together in the white vehicle, Dillard and his mother exited the vehicle at a friend's house and the unidentified woman then drove herself and Glover to a store. Although Dillard testified he "said go ahead but come right back" in regards to the trip to the store, he later stated the unidentified woman stole his mother's vehicle. On cross-examination, Dillard acknowledged he had never discussed the alleged theft with anyone before testifying. Pfeifer testified as a rebuttal witness for the state. Pfeifer stated Dillard told him that the only occupants of the white vehicle throughout the day in question were himself and Glover.

{¶ 12} Glover testified on his own behalf. Glover stated the unidentified woman drove the white vehicle while he was asleep in the back seat until a loud boom woke him. Glover testified the white vehicle jumping the parking lot and sidewalk curbs did not wake him from his deep sleep. Glover attributed his deep sleep to an extended period of partying that left him in a simultaneous state of drunk and hung over similar to a "semi-concussion." Glover described the collision as a blur and that he immediately felt broken glass all over him. Following the collision, Glover unsuccessfully attempted to exit the vehicle on the passenger side. Next, Glover "jumped" over the center console to the driver's door and exited the vehicle. Glover described a medical condition that restricted his mobility, which he referred to as "dropped-foot." Glover did not provide any further evidence regarding this claimed disability.

{¶ 13} On cross-examination, Glover failed to identify the source of the broken glass when confronted with photographic evidence depicting intact windows on the white vehicle. Additionally, the state questioned Glover regarding three prior felony convictions for possession of drugs, and one separate charge for weapons while under disability. Glover acknowledged the drug convictions and denied being convicted of the weapons while under disability charge. Upon realizing that the weapons under disability charge had been dismissed, the prosecutor acknowledged the mistake, apologized, and moved on to further questioning.

{¶ 14} Following the close of evidence, the trial court denied the defense's renewed Crim.R. 29 motion. The jury found Glover guilty on the remaining charges. In its sentencing entry, the trial court merged as allied offenses of similar import the failure to comply convictions, the convictions for trafficking in cocaine and possession of cocaine, and the convictions for trafficking in marijuana and possession of marijuana. Accordingly, the trial court entered convictions for one count of failure to comply, three counts of aggravated vehicular assault, one count of trafficking in cocaine, one count of trafficking in marijuana, and one count of possession of drug paraphernalia. The trial court sentenced Glover to an aggregate term of eight and one-half years in prison.

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE TRIAL COURT ERRED IN IMPOSING A SENTENCE SEPARATELY FOR ALLIED OFFENSES WHEN SAID OFFENSES SHOULD HAVE MERGED.

{¶ 17} Glover contends the trial court erred by failing to merge his three convictions for aggravated vehicular assault because the individuals in the dark-colored vehicle were injured by a single collision with the white vehicle driven by Glover.[1]

---

1. We note that in posing this argument, Glover does not concede that he was the driver of the white vehicle. Rather, he argues based on the jury's factual findings the trial court should have merged the three convictions.

- 5 -

{¶ 18} Whether offenses constitute allied offenses of similar import subject to merger under R.C. 2941.25 is a question of law that appellate courts review de novo. *Accord State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 26-28. Pursuant to R.C. 2941.25, a trial court shall not impose multiple punishments for the same criminal conduct. The statute provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 19} "In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors – the conduct, the animus, and the import." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, paragraph one of the syllabus. If any of the following are true, a defendant's convictions do not merge and he or she may be sentenced for multiple offenses: "(1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Id.* at paragraph three of the syllabus. Two or more offenses are of dissimilar import if "the defendant's conduct constitutes offenses *involving separate victims* or if the harm that results from each offense is separate and identifiable." (Emphasis added.) *Id.* at paragraph two of the syllabus.

{¶ 20} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id.* at ¶ 26. Therefore, the analysis "may result in varying results for the same set of offenses in different cases." *State*

*v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, ¶ 52, *abrogated in part by Ruff* at ¶ 30-33. In making this determination pursuant to R.C. 2941.25, a court must review the entire record. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, ¶ 24. The burden lies with the defendant to establish his entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act. *State v. Lewis*, 12th Dist. Clinton No. CA2008-10-045, 2012-Ohio-885, ¶ 14.

{¶ 21} Glover asserts that since the offenses arose from the same conduct – the collision between the white vehicle and the dark-colored vehicle – the trial court should have merged his three convictions for aggravated vehicular assault. However, it is clear from the record that there were three separate victims involved in the collision. Moreover, each individual victim testified regarding the separate and identifiable harm he or she suffered due to the collision. Therefore, pursuant to *Ruff*, the three offenses of aggravated vehicular assault are of dissimilar import and do not merge.

{¶ 22} Accordingly, the trial court did not err by entering separate convictions for the three aggravated vehicular assault charges. Glover's first assignment of error is overruled.

{¶ 23} Assignment of Error No. 3:

{¶ 24} PROSECUTORIAL MISCONDUCT [WAS] COMMITTED DEN[YING] APPELLANT HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL AS GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTION.

{¶ 25} Glover contends the state committed an act of prosecutorial misconduct, which denied him a fair trial. Specifically, Glover argues the prosecutor improperly questioned him during cross-examination regarding a weapons under disability charge that had been dismissed.

{¶ 26} The test for prosecutorial misconduct is whether the remarks made by the prosecution were improper and, if so, whether they prejudicially affected substantial rights of

the accused. *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). The touchstone of the analysis is the fairness of the trial, not the culpability of the prosecutor. *State v. Lott*, 51 Ohio St.3d 160, 166 (1990). An appellate court will not deem a trial unfair where a review of the entire trial demonstrates beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 121.

{¶ 27} Glover did not object to the prosecutor's alleged improper question during cross-examination. "A failure to object to alleged prosecutorial misconduct waives all but plain error." *State v. Lamb*, 12th Dist. Butler Nos. CA2002-07-171 and CA2002-08-192, 2003-Ohio-3870, ¶ 13. "Prosecutorial misconduct rises to the level of plain error if it is clear the defendant would not have been convicted in the absence of the improper comments." *State v. Israel*, 12th Dist. Butler No. CA2010-07-170, 2011-Ohio-1474, ¶ 43.

{¶ 28} The relevant line of questioning between the prosecutor and Glover is as follows:

> [Prosecutor]: You were convicted in 2006 in Montgomery County for possession of drugs, a felony, is that correct?
>
> Glover: Yes sir.
>
> [Prosecutor]: You were convicted in 2009 in Montgomery County for possession of drugs, a felony, is that correct?
>
> Glover: Yes sir.
>
> [Prosecutor]: You were convicted in 2010 of possession of cocaine, a felony, is that correct[?]
>
> Glover: Yes sir.
>
> [Prosecutor]: You were convicted in 2011 for having weapons while under disability, is that correct?
>
> Glover: I didn't get convicted of none of that. [sic]
>
> [Prosecutor]: I apologize sir, I apologize, it appears that [charge]

was dismissed, is that correct?

Glover: Yes sir.

[Prosecutor]: I apologize. But those other three, those were correct?

Glover: Yes sir.

{¶ 29} The state claims the prosecutor's question was not improper because it was an "honest mistake" that was quickly corrected and followed by multiple apologies. Therefore, the state contends the prosecutor's question does not amount to an act of bad faith, but merely a genuine mistake. The state concedes prosecutorial misconduct does not contain a mens rea element, but cites a Ninth District opinion to argue the prosecutor's single overzealous mistake did not prejudice Glover denying him a fair trial. *See State v. Springfield*, 82 Ohio App.3d 705, 711 (9th Dist.1992) (finding no prejudice where prosecutor improperly referred to a misdemeanor charge as a felony, and the trial court promptly corrected the error); *see also State v. Layne*, 12th Dist. Clermont No. CA2009-07-043, 2010-Ohio-2308, ¶ 60 (stating prosecutorial misconduct is not grounds for reversal unless the alleged improper remarks denied the accused a fair trial).

{¶ 30} It is undisputed the prosecutor mistakenly questioned Glover regarding a charge that had been dismissed. The prosecutor and Glover quickly corrected the error, the prosecutor apologized, and there was no further mention of the charge. The question before this court is whether Glover would have been convicted in the absence of the alleged improper question. Based on the overwhelming evidence of Glover's guilt, as discussed below, we find no reversible error. The record does not support a finding that had the prosecutor's question not occurred, Glover would not have been convicted.

{¶ 31} Therefore, Glover's third assignment of error is overruled.

{¶ 32} Assignment of Error No. 4:

{¶ 33} THE VERDICT OF THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 34} Glover contends the jury lost its way, creating a manifest miscarriage of justice requiring reversal of his convictions.

{¶ 35} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. In making this determination, a reviewing court looks at the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34. "An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal." *State v. Couch*, 12th Dist. Butler No. CA2016-03-062, 2016-Ohio-8452, ¶ 8.

{¶ 36} With respect to the drug offenses, Glover argues multiple people had access to the white vehicle where police located the illegal drugs; therefore, his drug convictions are against the manifest weight of the evidence. Glover's drug convictions included possession and trafficking in marijuana and cocaine, and possession of drug paraphernalia. Specifically, Glover takes issue with the "knowingly" element of the drug offenses. Glover argues his "mere presence" in the white vehicle, alongside others who were also in close proximity to the drugs and drug paraphernalia, does not alone demonstrate he knowingly obtained, possessed, used, prepared for delivery, or distributed the drugs.

{¶ 37} The drug trafficking statute provides "[n]o person shall knowingly * * * (2)

[p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance * * *, when the offender knows or has reasonable cause to believe that the controlled substance * * * is intended for sale or resale by the offender or another person." R.C. 2925.03(A)(2). Likewise, one is guilty of possession of illegal drugs if one "knowingly obtain[s], possess[es], or use[s] a controlled substance * * *." R.C. 2925.11(A). One is guilty of possession of drug paraphernalia if one "knowingly use[s], or possess[es] with purpose to use, drug paraphernalia." R.C. 2925.14(C)(1). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶ 38} In regard to the failure to comply and aggravated vehicular assault offenses, Glover argues the state failed to present evidence that he was the driver of the white vehicle, or at least, there was sufficient conflict in the evidence regarding who was the driver of the white vehicle to demonstrate the jury clearly lost its way by finding him guilty of these offenses.

{¶ 39} R.C. 2921.331(B) provides "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." A failure to comply offense becomes a third-degree felony if the operation of the vehicle by the offender proximately causes serious physical harm to persons or property, or creates a substantial risk of such harm. R.C. 2921.331(C)(5)(a)(i) and (ii). With respect to aggravated vehicular assault, "[n]o person, while operating * * * a motor vehicle * * * shall [recklessly] cause serious physical harm to another person * * *." R.C. 2903.08(A)(2)(b).

{¶ 40} After thoroughly reviewing the record, weighing inferences and examining the credibility of the witnesses, we find Glover's convictions are not against the manifest weight of the evidence. The state presented testimony and evidence from which the jury could have

found all the essential elements of the offenses beyond a reasonable doubt.

{¶ 41} The state introduced testimony from several witnesses who saw Glover exiting the front driver's door of the white vehicle following the collision. Two witnesses identified Glover in open court as the man driving and exiting the white vehicle. Another witness identified the culprit as a black male wearing a white tee shirt. The state presented evidence for the jury to make the inference that such male was Glover, as he fit the description when apprehended while hiding three to four houses away from the intersection. One witness thought a female might have fled the area of the collision with Glover. However, the remaining eyewitnesses identified Glover as the sole occupant of the white vehicle. Furthermore, the state presented expert testimony that it was highly unlikely that there was a second occupant in the white vehicle at the time of the collision. The expert supported his testimony with data retrieved from the airbag control module as well as physical tests conducted on the seatbelts of the white vehicle.

{¶ 42} Glover testified he was in a deep sleep in the back seat of the vehicle at the time of the collision due to an extended period of partying. He described his state as a "semi-concussion" because he was simultaneously drunk and hung over. Upon awaking from this "semi-concussion" state, Glover described the collision as a blur and that he felt broken glass all over him. Glover conceded he exited the front driver's door, but only because he could not exit on one side of the vehicle. Glover's testimony, if believed by the jury, could be construed to vaguely contradict evidence presented by the state that Glover was the driver of the vehicle. However, this poses a credibility determination for the jury and we defer to the factfinders' reasonable resolution of this conflicting testimony.

{¶ 43} Glover's testimony regarding his drunken and hung over state asked the jury to find that the white vehicle speeding over parking and sidewalk curbs did not wake Glover from his deep sleep, and that only after a high-speed collision was Glover's "semi-

concussion" state interrupted. Following the collision, Glover was covered in broken glass, the source of which remained unknown; as the state presented evidence the windows of the white vehicle remained intact. And then, despite his mobility limitations due to "dropped-foot," Glover "jumped" over the center console of the vehicle to exit the front driver's door, despite no evidence that the rear driver-side door was inoperable.

**{¶ 44}** Additionally, the state presented evidence the white vehicle contained two bags of marijuana, scales, small baggies, syringes, approximately $10,000 cash, and crack cocaine. Further, that one bag of marijuana was atop the center console in plain view from outside the white vehicle, a smaller bag of illegal drugs was located in the passenger door compartment, and the remaining items were located beneath the passenger seat. Detective Lowe testified that based on his training and experience as a detective for 17 years and working undercover narcotics cases, he believed the items recovered from the white vehicle to be indicative of the sale of narcotics. Glover denied knowledge of the presence of these items, again referring to his "semi-concussion" state of drunkenness making him generally unaware of anything around him.

**{¶ 45}** Finally, the state presented evidence of the injuries sustained by three of the four occupants of the dark-colored vehicle struck in the collision. Each occupant sustained several injuries, including headaches, bruises, burns, and abrasions requiring stitches, as well as one occupant sustained two broken vertebrae in his neck, a severe concussion, and a torn pectoral muscle. All three occupants required transport to hospitals for care and one required additional transport to a second medical facility for further care.

**{¶ 46}** Based on the evidence presented, we find the jury did not clearly lose its way or create such a manifest miscarriage of justice requiring reversal of Glover's convictions. The state presented overwhelming evidence of each element of the alleged offenses. Therefore, Glover's convictions are not against the manifest weight of the evidence.

{¶ 47} Accordingly, Glover's fourth assignment of error is overruled.

{¶ 48} Assignment of Error No. 5:

{¶ 49} THE TRIAL COURT ERRED IN VIOLATING THE CRIMINAL RULE DICTATES REGARDIG [SIC] JURY INSTRUCTIONS.

{¶ 50} Glover contends the trial court abused its discretion by failing to follow the parameters of Crim.R. 30(A). Glover notes his trial counsel objected to the inclusion of a consciousness of guilt jury instruction regarding his flight from the scene following the vehicle collision, which the trial court overruled and noted for the record. However, Glover contends, pursuant to Crim.R. 30, the timeframe provided by the trial court for this objection was improper because it occurred prior to closing arguments and jury instructions. Glover appears to implicitly argue the timing of his counsel's objection foreclosed his ability to assign error to the trial court's jury instruction on that issue. Even under this construction of Glover's argument, we find no reversible error.

{¶ 51} Crim.R. 30(A) provides that an objection to a jury instruction should be specific and made after the instruction is given, but before the jury retires. The purpose of these two requirements is to bring any error to the attention of the trial court, so the trial court may provide a curative instruction before the jury commences deliberations and to provide a complete record for appellate review. *State v. Robinson*, 4th Dist. Scioto No. 94CA2277, 1995 Ohio App. LEXIS 4882, *5-6 (Oct. 24, 1995). A party's failure to comply with Crim.R. 30(A) waives all but plain error. *Id.* However, a party does not waive his objection to a jury instruction if the record affirmatively demonstrates the trial court has been fully apprised of the correct law governing a material issue in dispute. *State v. Wolons*, 44 Ohio St.3d 64 (1989), paragraph one of the syllabus.

{¶ 52} Before closing arguments, the trial court provided the parties an opportunity to object to the proposed jury instructions. Glover's trial counsel objected to, and argued the

merits of, the consciousness of guilt instruction. The trial court addressed the issues raised by counsel, overruled the objection, and noted it for the record. Therefore, the record affirmatively demonstrates the trial court was fully apprised of the relevant law governing the instruction at issue. Glover correctly asserts his trial counsel did not object when the trial court charged the jury, but fails to demonstrate how the timing of the objection did not comport with the purpose of Crim.R. 30(A). Rather, the objection brought the issue to the court's attention and preserved the objection for appeal. Thus, any issue with the timing of the trial court noting the objection is merely a technical error, but not prejudicial error. *Gurr v. Gurr*, 12th Dist. Butler No. CA93-06-122, 1994 Ohio App. LEXIS 498, *3 (Feb. 14, 1994) (holding appellant must demonstrate prejudice for reversal on a technical error); *State v. Hobbs*, 59 Ohio App. 274 (12th Dist.1937), paragraph two of the syllabus (holding a case does not require reversal on a technical error unless the party demonstrates resulting prejudice). As analyzed above, Glover fails to demonstrate any resulting prejudice, and thus, any alleged technical error with the timing of his trial counsel's objection does not warrant reversal.

{¶ 53} Accordingly, Glover's fifth assignment of error is overruled.

{¶ 54} Assignment of Error No. 2:

{¶ 55} APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTION.

{¶ 56} Glover argues he was denied effective assistance of counsel because his trial counsel allegedly failed to raise certain issues. Specifically, Glover contends his trial counsel failed to raise the issues of merging allied offenses of similar import, failed to present mitigating evidence during sentencing, failed to require the trial court to adhere to the parameters of Crim.R. 30(A), and failed to object or move for a mistrial when the prosecutor questioned Glover regarding the dismissed charge.

{¶ 57} To prevail on an ineffective assistance of counsel claim, an appellant must establish (1) that his trial counsel's performance was deficient; and (2) that such deficiency prejudiced the defense to the point of depriving the appellant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052 (1984); *State v. Ullman*, 12th Dist. Warren No. CA2002-10-110, 2003-Ohio-4003, ¶ 43. Trial counsel's performance will not be deemed deficient unless it "fell below an objective standard of reasonableness." *Strickland* at 688. To show prejudice, a defendant must prove there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Wilson*, 12th Dist. Madison No. CA2013-10-034, 2014-Ohio-2342, ¶ 17. A defendant's failure to satisfy one part of the *Strickland* test negates a court's need to consider the other. *State v. Hurst*, 12th Dist. Brown No. CA2014-02-004, 2014-Ohio-4890, ¶ 7.

{¶ 58} We previously overruled Glover's arguments regarding merger of allied offenses of similar import, Crim.R. 30(A), and failing to object or move for a mistrial when the prosecutor questioned Glover regarding the dismissed charge. Therefore, even assuming deficiency by his trial counsel, Glover fails to show any resulting prejudice that denied him a fair trial.

{¶ 59} Next, we turn to Glover's argument his trial counsel should have presented mitigating evidence during sentencing. Glover argues his trial counsel was deficient because the only statements presented in mitigation were made by Glover. A review of the sentencing transcript demonstrates Glover maintained his innocence and denied the adequacy of the evidence presented at trial. However, the record does not reflect what mitigation evidence defense counsel could have offered that might have resulted in a lesser sentence. Rather, Glover makes a conclusory argument that his counsel's performance was "prejudicial to [him]." Thus, Glover failed to demonstrate any resulting prejudice. Therefore,

Glover's second assignment of error is overruled.

{¶ 60} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.