[Cite as *State v. Colquitt*, 2025-Ohio-2727.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2024-12-090<br>CA2024-12-094 |
| | : | |
| - vs - | : | OPINION AND<br>JUDGMENT ENTRY<br>8/4/2025 |
| | : | |
| PIERRE O. COLQUITT, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 21CR037718

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Christopher Bazeley, for appellant.

**O P I N I O N**

**PIPER, J.**

{¶ 1} Appellant, Pierre O. Colquitt, appeals his convictions in the Warren County Court of Common Pleas arising from a high-speed chase. On appeal, Colquitt challenges the trial court's denial of his motions to dismiss on speedy-trial grounds and the trial court's

decision not to merge his convictions for failure to comply and obstructing official business. For the reasons outlined below, we affirm.

## I. Factual and Procedural Background

{¶ 2} On January 27, 2021, at approximately 4:30 a.m., Christopher Davis was at his home in Turtlecreek Township, Warren County, Ohio, getting ready for work. He heard gravel crunching outside, indicating someone was on his driveway. Despite the very early morning hour, someone knocked on his door or rang the doorbell. Davis initially thought it might be his brother, but upon turning on the light, he described seeing an unknown, large black male asking for directions to Jo-Mart. After giving directions through the door, Davis observed the man walk toward a dark-colored Dodge Magnum.

{¶ 3} Although Davis heard the car door shut, the vehicle remained stationary, prompting Davis to retrieve his shotgun and call 9-1-1. As he watched from inside, the vehicle moved out of sight near his garage.

{¶ 4} Sgt. Nicholas Caito of the Warren County Sheriff's Office responded to the location within three minutes of receiving the dispatch. As he approached the house via the gravel driveway, he encountered the suspect vehicle driving toward him without headlights. The vehicle then reversed back toward the house, and the driver, later identified as Pierre Colquitt, waved his arms frantically. Sgt. Caito activated his cruiser's lights and spotlight, exited his vehicle, and ordered the driver to stop. However, Colquitt ignored the commands and suddenly sped forward while flashing his headlights. To avoid being hit, Sgt. Caito was forced to jump into his cruiser just before it was struck on the driver's side.

{¶ 5} Sgt. Caito reported the collision and initiated a pursuit. Colquitt turned south onto State Route 741, and Sgt. Caito followed with lights and siren activated, reaching

speeds of 90 mph. Colquitt drove recklessly, crossing double yellow lines and passing vehicles, including a semi-truck. His vehicle, damaged and emitting smoke and sparks, continued into Mason, Ohio.

{¶ 6} Travelling at approximately 80 mph, Colquitt ran a red light at the intersection of State Route 741 and U.S. 42, where two Mason police cruisers joined the pursuit. Colquitt continued driving dangerously through road construction and eventually crashed into a culvert on a golf course. He exited the vehicle and tried to escape on foot, while officers pursued him shouting commands to stop. During the chase on the hilly terrain, Officer Eric Wallace lost his footing several times risking potential injury.

{¶ 7} Eventually, Colquitt stopped, turned, and raised his hand from his waist to his face. Both Mason officers drew their weapons and ordered him to show his hands, but he did not comply. Sgt. Caito deployed his taser twice, but it was ineffective due to Colquitt's layered clothing. Between taser attempts, Colquitt placed an object in his mouth—later identified as a crack pipe—lit it, and briefly attempted to smoke it. Officer Wallace then tackled Colquitt, and the officers handcuffed and arrested him. A search revealed the crack pipe and a bag of cocaine.

{¶ 8} On March 1, 2021, a Warren County Grand Jury indicted Colquitt on multiple charges, including felonious assault of a peace officer, two counts of failure to comply, obstructing official business, possession of cocaine, and possession of drug paraphernalia. Colquitt waived his right to a jury trial, and a bench trial was held on April 7, 2022. The trial court found him guilty on all counts except felonious assault.

{¶ 9} Colquitt appealed to this court in Case No. CA2022-05-028, and on December 12, 2022, we reversed his convictions due to a violation of his right to self-representation and remanded the case for a new trial. *State v. Colquitt*, 2022-Ohio-4448

(12th Dist.).

{¶ 10} On January 12, 2023, Colquitt executed a written waiver of counsel. On May 1, 2023, he filed a motion to dismiss on speedy trial grounds which the trial court denied on October 31, 2023. He filed additional motions on the same grounds on November 16, 2023, and May 2, 2024, which were denied on April 17, 2024, and July 17, 2024, respectively. Colquitt attempted to appeal those denials in Case Nos. CA2024-05-025, CA2024-07-048, and CA2024-11-077, but each was dismissed for lack of a final appealable order.

{¶ 11} On November 7, 2024, Colquitt again waived his right to a jury trial. A new bench trial was held on December 2, 2024 with Colquitt representing himself pro se. Prior to opening statements, Colquitt waived his right to appear at trial and elected not to have standby counsel step in to represent him. Thereafter, the State presented its case with no defense from Colquitt, resulting in the trial court finding Colquitt guilty on the two counts of failure to comply, obstructing official business, possession of cocaine, and possession of drug paraphernalia. After delivering the verdicts, the trial court asked the State whether the two counts of failure to comply should merge. The State conceded they should, and stated that it would proceed to sentencing on the failure to comply in Count 2. The trial court made no further comment on whether the counts should merge, or would be merged, at sentencing.

{¶ 12} On December 23, 2024, a sentencing hearing was held. Without any discussion of the merger issue, the trial court sentenced Colquitt to concurrent 18-month prison terms for each failure to comply count. The trial court ordered these to be served consecutively to concurrent six-month terms for obstructing official business and possession of cocaine, and concurrently with a 30-day jail term for possession of drug

paraphernalia, for a total of 24 months in prison. Colquitt made no objection that any of his offenses should have merged. On the same day, the trial court journalized a judgment entry reflecting the same sentence without any reference to merger.

{¶ 13} Colquitt timely appealed in Case Nos. CA2024-12-090 and CA2024-12-094, which this court consolidated. Colquitt now raises two assignments of error for our review.

## II. Legal Analysis

{¶ 14} Assignment of Error No. 1:

{¶ 15} THE TRIAL COURT VIOLATED COLQUITT'S CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL.

{¶ 16} In his first assignment of error, Colquitt argues the trial court erred when it overruled his motions to dismiss for the violation of his constitutional right to a speedy trial.

{¶ 17} The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution guarantee the right to a speedy trial. The statutory speedy trial provisions set forth in R.C. 2945.71 through 2945.73 are coextensive with the constitutional speedy trial provisions. *State v. Turner*, 2020-Ohio-1548, ¶ 21 (12th Dist.), citing *State v. King*, 70 Ohio St.3d 158, 160 (1994). However, as Colquitt concedes, the statutory speedy trial provisions apply only to the initial trial following arrest and do not extend to retrials ordered upon reversal and remand from an appeal. Instead, here, constitutional standards govern the timeframe within which a defendant must be brought to trial following a remand. *State v. Hull*, 2006-4252, ¶ 26. This timeframe must be "'a reasonable period consistent with constitutional standards.'" *Id*. at ¶ 20, quoting *Barker v. Wingo*, 407 U.S. 514, 523 (1972).

{¶ 18} "To determine whether an accused has been denied his constitutional right to a speedy trial, a court must consider the following four factors: (1) the length of the delay, (2) the reason for the delay, (3) the accused's assertion of his right to a speedy trial, and (4) the prejudice to the accused as a result of the delay." *State v. Hubbard*, 2015-Ohio-646, ¶ 14 (12th Dist.), citing *Barker*, at 530. None of these four factors are determinative of whether an accused suffered a violation of his constitutional right to a speedy trial; rather, the court must consider the four factors collectively. *Barker* at 533.

{¶ 19} The first factor, the length of delay, is a 'triggering mechanism' that determines the necessity of inquiry into the other factors. *Hubbard*, at ¶ 15, citing *State v. Triplett*, 78 Ohio St.3d, 566, 568 (1997). The date on which a court of appeals orders a case remanded starts the clock to determine the relevant length of delay. *State v. Long*, 2020-Ohio-5363, ¶ 16. "Generally, a delay that approaches one year is presumptively prejudicial." *Id.* at ¶ 14. Once the *Barker* analysis is triggered, the length of delay, beyond the initial threshold showing, is again considered and balanced against the other relevant factors. *Hubbard* at ¶ 15.

{¶ 20} Here, we remanded Colquitt's case on December 12, 2022 and a new trial was held on December 2, 2024. This delay of 721 days is presumptively prejudicial, thus triggering the *Barker* analysis. We therefore turn to an analysis of each factor.

*Length of the Delay*

{¶ 21} Although the length of delay in this case was nearly two years, the first *Barker* factor carries little weight for Colquitt. While Colquitt's case was pending in Warren County, he had other cases pending in other jurisdictions and was held in Clark County Jail. *See Hubbard* at ¶ 17-18 (finding length of delay weighed only slightly in favor of defendant where he was already incarcerated on unrelated charges).

*Reason for the Delay*

{¶ 22} The second *Barker* factor weighs heavily in favor of the State because much of the delay is attributable to Colquitt. On March 6, 2023, Colquitt failed to appear for a pretrial hearing because he was being held in Clark County Jail for pending charges in that jurisdiction. Colquitt again failed to appear on June 13, 2023. Additionally, from May 2023 to May of 2024, Colquitt filed four separate motions to dismiss for various reasons which were ultimately denied. Then from May of 2024 to November of 2024, Colquitt filed three separate notices of appeal to this court, each of which were ultimately dismissed for lack of a final appealable order, the last being terminated on December 10, 2024. From March of 2023 until December of 2024, trial was delayed for Colquitt to be located, for the trial court to decide each of his motions, and for this court to rule on his premature appeals.

*Accused's Assertion of His Right*

{¶ 23} An accused's assertion of, or failure to assert, his speedy-trial right is a factor to be considered in determining whether an accused's constitutional rights were violated. *Barker*, 407 U.S. at 528; *Long* at ¶ 14. In analyzing this factor, the court may weigh the "frequency and force of the objections as opposed to attaching significant weight to a purely *pro forma* objection." *Barker*, 407 U.S. at 529. We find that Colquitt asserted his constitutional right to a speedy trial in his motion to dismiss, filed pro se on May 1, 2023, but provided no analysis of the issue and no discussion of any prejudice he suffered. Colquitt's subsequent motions to dismiss, filed November 16, 2023 and May 2, 2024, only make passing reference to his speedy-trial right, and offer no further analysis. Colquitt also orally asserted his right to a speedy trial during status conference hearings on January 12, 2023 and November 7, 2024, but offered no analysis beyond asserting

that more than 270 days had passed without a trial and no tolling events had occurred. Consequently, Colquitt's bare assertions of his right to a speedy trial weigh very slightly in favor of Colquitt.

*Prejudice to the Accused*

{¶ 24} The final factor we must consider is the prejudice to the accused. In *Barker*, the United States Supreme Court identified three interests that the speedy-trial right is designed to protect: (1) oppressive pretrial incarceration, (2) the anxiety and concern of the accused, and (3) the possibility that the accused's defense will be impaired. *Barker* at 532. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*. A defendant is prejudiced if a witness dies, disappears, or is unable to accurately recall events of the distant past. *Id*.

{¶ 25} In Colquitt's various motions to dismiss on speedy trial grounds, he made no attempt to demonstrate prejudice. As Colquitt was held by Clark County for separate charges, he did not suffer oppressive pretrial incarceration due to any delay in this case. *See Hubbard* at ¶ 23 (oppressive pretrial incarceration not implicated where defendant was already incarcerated on unrelated charges). On appeal, Colquitt argues for the first time that he suffered "anxiety and concern" due to the delay. Colquitt's blanket statement, without more, that he suffered anxiety caused by delay is insufficient to show the type of prejudice required for a violation of constitutional speedy-trial rights. *See Id*. Further, Colquitt would already have been concerned for his pending charges in other jurisdictions. Finally, the same witnesses who testified at Colquitt's first trial testified to the same events at his second trial and Colquitt has not demonstrated any impairment to his defense.

{¶ 26} Accordingly, our review of the *Barker* factors leads us to the conclusion that

Colquitt's constitutional right to a speedy trial was not violated. Therefore, the trial court did not err in denying Colquitt's motions to dismiss.

{¶ 27} Colquitt's first assignment of error is overruled.

{¶ 28} Assignment of Error No. 2:

{¶ 29} THE TRIAL COURT ERRED BY NOT MERGING COLQUITT'S CONVICTIONS FOR FAILURE TO COMPLY AND BY FAILING TO MERGE HIS FAILURE TO COMPLY CONVICTIONS WITH HIS CONVICTION FOR OBSTRUCTION.

{¶ 30} In his second assignment of error, Colquitt argues that the trial court erred when it did not merge his convictions for two counts of failure to comply, and one count of obstructing official business. Colquitt asserts that his two failure to comply offenses (Counts 2 and 3) involved the same conduct, a single high-speed chase, and therefore are allied offenses that should have merged. Colquitt also asserts that his obstructing official business offense (Count 4) involved a course of conduct identical to at least one of the failure to comply offenses and should have merged.

*Allied Offenses*

{¶ 31} Ohio prohibits the imposition of multiple punishments for the same criminal conduct pursuant to R.C. 2941.25. *State v. Standifer*, 2012-Ohio-3132, ¶ 64 (12th Dist.). The statute provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

- 9 -

{¶ 32} To determine whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, trial courts and the reviewing courts on appeal "must evaluate three separate factors—the conduct, the animus, and the import." *State v. Ruff*, 2015-Ohio-995, paragraph one of the syllabus, ¶ 25. If any of the following are true, a defendant's convictions do not merge and he or she may be sentenced for multiple offenses: "(1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Id*. at paragraph three of the syllabus, ¶ 25. Two or more offenses are of dissimilar import if "the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id*. at paragraph two of the syllabus, ¶ 23.

{¶ 33} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id*. at ¶ 26. Therefore, the analysis may result in varying results for the same set of offenses in different cases. *State v. Glover*, 2017-Ohio-7360, ¶ 20. In making this determination, a court must review the entire record, but the burden lies with the defendant to establish his entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act. *Id*.

*Standard of Review*

{¶ 34} Whether offenses constitute allied offenses of similar import subject to merger under R.C. 2941.25 is a question of law that appellate courts ordinarily review de novo. *Glover* at ¶ 18. De novo appellate review means that this court independently reviews the record and affords no deference to a trial court's decision. *State v. Watkins*,

2021-Ohio-163, ¶ 37. However, here, Colquitt failed to raise this issue at his sentencing hearing and thus has forfeited all but plain error. *State v. Bailey*, 2022-Ohio-4407, ¶ 7.

**{¶ 35}** Instead, "Under the plain-error doctrine, intervention by a reviewing court is warranted only under exceptional circumstances to prevent injustice." *Id.* at ¶ 8; *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus ("Notice of plain error . . . is to be taken with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice."). To prevail under the plain error doctrine, Colquitt must establish that "an error occurred, that the error was obvious, and that there is 'a reasonable probability that the error resulted in prejudice,' meaning that the error affected the outcome of the trial." *Bailey* at ¶ 8; *State v. Rogers*, 2015-Ohio-2459, ¶ 28.

*Colquitt's Offenses Are of Dissimilar Import*

**{¶ 36}** Our independent review reveals that each of the three offenses in question occurred within a short period of time, each with a distinct animus, escalating Colquitt's conduct in the commission of his offenses. Each successive offense involved separate additional victims and separate identifiable harms. Therefore, none of the three offenses merge, and the trial court did not err in imposing separate sentences for each.

**{¶ 37}** When Sgt. Caito was first dispatched and confronted Colquitt in the gravel driveway at Christopher Davis's home, Colquitt was in possession of cocaine, a felony of the fifth degree. Colquitt ignored Sgt. Caito's signals to stop, struck Sgt. Caito's vehicle in the driveway with his car, and then fled onto public roads. Accordingly, Count 3 of the indictment charged Colquitt with failure to comply, pursuant to R.C. 2921.331(B) and (C)(4). The statute provides, "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." R.C. 2921.331(B). A violation of division

- 11 -

(B) is a felony of the fourth degree if "the offender was fleeing immediately after the commission of a felony," to wit, possession of cocaine. R.C. 2921.331(C)(4); *See State v. Robinson*, 2005-Ohio-1343 (7th Dist.) (finding possession of cocaine and attempting to flee from law enforcement supported a fourth degree felony failure to comply conviction). This is the first identifiable harm Colquitt perpetrated.

{¶ 38} After escaping Davis's driveway, Colquitt drove at speeds in excess of 80 mph, weaving between lanes and passing other vehicles on the road while being pursued by multiple police cruisers. Therefore, Colquitt caused a substantial risk of serious harm to the other vehicles on the road. Accordingly, Count 2 of the indictment charged Colquitt with "operat[ing] a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bringing his motor vehicle to a stop [when] the operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property in violation of R.C. 2921.331(B)," a felony of the third degree. This is a separate identifiable harm from Count 3, involving different additional victims, namely the other persons lawfully operating their vehicles on the road.

{¶ 39} At the end of the car chase, Colquitt crashed his vehicle into a culvert, exited, and led the police on a foot chase across a golf course. Therefore, Count 4 of the indictment charged Colquitt with obstructing official business pursuant to R.C. 2921.31(A) and (B). The statute provides "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." R.C. 2921.31(A). If the violation "creates a risk of physical harm to any person, obstructing official business is a felony of the fifth degree." R.C. 2921.31(B).

{¶ 40} The foot chase Colquitt initiated constituted separate conduct that served as the basis for his obstructing count. *See State v. Washington*, 2014-Ohio-1876, ¶ 18 (9th Dist.) (finding a foot chase constituted separate conduct from a car chase). Moreover, Officer Wallace lost his footing on the hilly terrain multiple times during the foot chase, constituting a risk of physical harm. *See In re E.C.*, 2013-Ohio-2584, ¶ 44 (5th Dist.) (slippery conditions constituted a risk of physical harm to deputies engaged in a foot chase).

{¶ 41} In his brief, Colquitt also argues that after the trial concluded, the State conceded the two failure to comply offenses should merge. Colquitt further argues there was only one course of conduct and therefore the trial court should have merged the three offenses. We disagree with the State's suggestion at the end of the trial as well as with Colquitt's argument.

{¶ 42} The Ohio Supreme Court has ruled there is no requirement for courts to consider only the evidence and arguments presented by the State at trial when determining whether offenses should merge. *State v. Washington*, 2013-Ohio-4982, ¶ 17. Rather, "[m]erger is a sentencing question, not an additional burden of proof shouldered by the State at trial." *Id.* at ¶ 18. Therefore, "when deciding whether to merge multiple offenses at sentencing pursuant to R.C. 2941.25, a court must review the entire record. . . to determine whether the offenses were committed separately or with a separate animus." *Id*. at ¶ 24. A court errs if it limits its analysis solely to what it perceived as the State's theory of the case. *Id.*; *See also State v. Riley*, 2024-Ohio-2519, ¶ 22-23 (3d Dist.) (prosecution not strictly bound by allegations set forth in a bill of particulars and the State's recitation of facts at sentencing supported the imposition of separate sentences based on separate conduct).

{¶ 43} Although the trial court did not express its rationale at sentencing in deciding not to merge the offenses, it was not obligated to accept the State's earlier spontaneous concession nor was it limited by the State's arguments. We find the trial court's sentence was correct because each offense was committed separately (despite being in succession of one another) and constituted offenses of dissimilar import. Accordingly, the trial court did not err, much less plainly err, by not merging Colquitt's offenses.

{¶ 44} Colquitt's second assignment of error is overruled.

### III. Conclusion

{¶ 45} We find that the trial court did not err in denying Colquitt's motions to dismiss on speedy-trial grounds and did not err in deciding not to merge his two failure to comply offenses and obstructing official business offense.

{¶ 46} Judgment affirmed.

HENDRICKSON, P.J., and SIEBERT, J., concur.

# **J U D G M E N T   E N T R Y**

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Warren County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Robin N. Piper, Judge

/s/ Melena S. Siebert, Judge