[Cite as *State v. Barnes*, 2025-Ohio-1967.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


STATE OF OHIO, :

    Appellee, : CASE NO. CA2024-01-011

     : <u>OPINION AND</u>
- vs - <u>JUDGMENT ENTRY</u>
     : 6/2/2025

JASON S. BARNES, :

    Appellant. :


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2023-08-1291


Michael T. Gmoser, Butler County Prosecuting Attorney, and John Heinkel, Assistant Prosecuting Attorney, for appellee.

Repper-Pagan Law, Ltd., and Christopher Pagan, for appellee.


# **O P I N I O N**

**BYRNE, P.J.**

{¶ 1} Jason S. Barnes appeals from his convictions for two criminal offenses in the Butler County Court of Common Pleas. For the reasons described below, we affirm.

## I. Factual and Procedural Background

{¶ 2}    In October 2023, a Butler County grand jury indicted Barnes on the following three counts:

| Count | Criminal Offense | Revised Code | Count Level |
|-------|------------------|--------------|-------------|
| 1 | Felonious Assault | 2903.11(A)(1) | Felony Two |
| 2 | Having Weapons While Under Disability | 2923.13(A)(2) | Felony Three |
| 3 | Aggravated Possession of Drugs (methamphetamine) | 2925.11(A) | Felony Five |

{¶ 3}    The charges stemmed from allegations that Barnes broke his girlfriend's arm with a punch and stabbed her in the leg. During the subsequent investigation, police found a loaded, operable handgun and two baggies containing methamphetamine on a nightstand next to the bed in the loft where the couple lived. Barnes was not permitted to have firearms due to a prior conviction for a felony offense of violence.

{¶ 4}    The matter proceeded to a jury trial. We will summarize the relevant testimony and other evidence below. In doing so, we will limit ourselves to testimony and other evidence related to the felonious assault and having-a-weapon-while-under-disability charges, as Barnes does not challenge his conviction for aggravated possession of drugs in this appeal.

### A. State's Case

### 1. Paige's Testimony

{¶ 5}    The victim, "Paige," testified that she began a romantic/dating relationship with Barnes in 2022.[1]  She and Barnes lived together at an "apartment kind of thing" ("the loft") in the garage at Wager's Junkyard ("Wager's") in St. Clair Township, Butler County,

---

1. "Paige" is a pseudonym used in this opinion for purposes of protecting the violent crime victim's identity and for improving the readability of the opinion. *See In re D.P.*, 2022-Ohio-4553, ¶ 1, fn. 1 (12th Dist.); *The Supreme Court of Ohio Writing Manual*, § 16, at 115 (3d Ed. 2024).

from 2022 until the incident dates in August 2023.

{¶ 6} Paige and Barnes kept the door to the loft locked. They ate meals in the loft and slept in the same bed in the loft. Other people were allowed into the loft, but only if either Barnes or Paige was present. Paige confirmed that there were photographs of Barnes and Barnes' deceased mother on the walls of the loft.

{¶ 7} According to Paige, in August 2023, she and Barnes were not getting along. Barnes had been accusing Paige of sleeping with other men. On August 19, 2023, the two engaged in a verbal argument that escalated into a physical attack when Barnes began hitting Paige. He punched her in the right arm with a balled-up fist. He punched her so hard that he broke her arm in two places.

{¶ 8} Paige testified that she could not move after that punch. She described the pain as "pretty close to ten." The pain was "excruciating" and lasted all night. She had never experienced pain like this before, even though she had broken a bone previously.

{¶ 9} Paige explained that Barnes began arguing with her again the next morning. Barnes said something about stabbing her and was "playing" with a knife like he was going to stab her. He then stabbed Paige in her leg. When Barnes pulled the knife out, he said, "oh, my God, you're bleeding" and "I didn't mean to do that." Blood was squirting out of Paige's leg. Barnes became hysterical and said he was going to kill himself. Barnes eventually helped Paige apply a Band-Aid to the stab wound, but she bled through the Band-Aid and had to change it several times.

{¶ 10} Paige remained with Barnes that day at Wager's. She testified that she did not ask for help from other Wager's employees because she feared what Barnes would do to her. She did not have her own cell phone to call 9-1-1.

{¶ 11} Later that day, Paige and Barnes drove to a Thorntons gas station. Barnes handed her money to buy pop and cigarettes. She went into the gas station and asked the attendant if she could use the phone. She bought the pop and cigarettes and told the attendant to give the products to Barnes. Then she locked herself in the bathroom and called her friend to come get her. Her friend picked her up at the gas station and took her to the hospital.

{¶ 12} At the hospital, Paige told the medical staff that Barnes had inflicted her injuries. Hospital staff casted her arm and referred her to an orthopedic specialist for follow-up. Approximately three months later, at the time of trial, Paige reported that her arm was still not fully healed, still hurt with a dull, aching pain, and may require surgery. Paige also reported an inability to lift or "really do anything" with her arm.

### 2. Medical Records

{¶ 13} Paige's medical records were introduced into evidence. In relevant part, they reflect that Paige reported to hospital medical staff that she had been attacked by her boyfriend and stabbed. She stated that she sustained an injury to her right forearm when she tried to block her boyfriend from hitting her. She also claimed to have sustained a stab injury to her left thigh.

{¶ 14} The attending doctor diagnosed Paige with "Closed fracture of shaft of right ulna" and "Stab wound of left knee." The records further reflected that an x-ray of Paige's right forearm showed a "nightstick fracture" to the shaft of the right ulna.

### 3. Deputy Bill Brown's Testimony

{¶ 15} Deputy Bill Brown, of the Butler County Sheriff's Office, testified that he met with Paige at the hospital. She told him that she and Barnes were in the "sleeping area"

at Wager's and they had an altercation over their relationship. She described how Barnes assaulted her, which was consistent with her trial testimony.

{¶ 16} Deputy Brown explained that during the hospital interview, he informed Paige that the sheriff's office had deputies responding to Wager's to locate Barnes. Deputy Brown testified that Paige told him to "let the other units know to be careful, that he did have a gun up in the sleeping area."

### 4. Deputy Robert Dreske's Testimony

{¶ 17} Deputy Robert Dreske, of the Butler County Sheriff's Office, testified that he responded to Wager's on August 20, 2023. He first went to the loft and found that the door was locked.

{¶ 18} A different deputy found and arrested Barnes at an adjacent property. Deputy Dreske took a key that was on Barnes' person and used it to open the loft door. When searching the loft, he found a black pistol. He also found two plastic bags containing a white crystal substance—which another witness testified was later tested and determined to be methamphetamine.[2] These items were located on a nightstand near the bed in the loft.

### B. Defense Case – Barnes' Testimony

{¶ 19} Barnes testified in his defense. Barnes worked as both a tow truck driver and the head mechanic at Wager's. Barnes denied that he and Paige were in a relationship but acknowledged that they had been intimate twice. Barnes described Paige as "homeless" and stated that on certain nights she would stay in the loft.

---

2. The analyst who conducted the test testified at Barnes' trial.

{¶ 20} Barnes testified that on August 19, 2023, Paige was with him, helping him work on a customer's car. He needed to use a tow truck to help in some aspect of this job, which involved dropping an engine from the car. While Barnes was with the customer's car, Paige was sitting in the driver's seat area of the tow truck, operating a hydraulic lever to assist Barnes. Barnes claimed that he observed Paige fall from the open driver's door of the tow truck. He stated that she hit her arm on the door of the truck as she was falling and hit her knee on either the tow truck's gas tank, or possibly something on the ground. Barnes explained that because this was a junkyard or scrapyard, there were rocks and metal on the ground. Barnes helped Paige apply a Band-Aid to the cut on her leg.

{¶ 21} The next day, Paige asked Barnes if she would take him to the emergency room after he got off work. He agreed he would. Around 4:00 p.m. that day, they went to Thorntons for pop and cigarettes. He asked Paige to go into Thorntons and pre-pay for gas and buy pop and cigarettes. She went inside the gas station but did not return. He subsequently found that his gas had been pre-paid and the attendant in the gas station handed him an 18-pack of pop and a pack of cigarettes. He had no idea where Paige was. He left the gas station.

{¶ 22} Barnes denied that the methamphetamine and pistol found in the loft were his. He claimed he lived at his mother's house in Hamilton, and only slept in the loft twice a week, if he worked late. Barnes stated that the photographs of his mother in the loft were "early birthday presents" from Paige and that he had similar photographs in his tow truck.

{¶ 23} Barnes denied that he caused any of the injuries suffered by Paige and

asserted that she was lying. As to why she was lying, Barnes stated that it may have had to do with him asking her to "go clean a truck." Barnes also suggested that a possible motive was that Paige may have stolen items from Wager's or its customers.

**C. Jury Instructions, Verdict, and Appeal**

{¶ 24} After the conclusion of testimony and closing arguments, the trial court provided the jury with jury instructions. Those instructions included an instruction defining "serious physical harm" as an element of felonious assault. As discussed below, at the state's request, the court added language to this instruction telling the jury that it could infer serious physical harm from the victim seeking medical treatment and that serious physical harm was established by a broken bone. Barnes did not object to this jury instruction language.

{¶ 25} After deliberation, the jury returned guilty verdicts on all counts. Barnes appealed, raising two assignments of error concerning only the felonious assault and having-weapons-under-disability counts.

**II. Law and Analysis**

**A. Jury Instructions on Felonious Assault and "Serious Physical Harm"**

{¶ 26} Barnes' first assignment of error states:

THE TRIAL COURT IMPROPERLY INSTRUCTED THE JURY ON SERIOUS PHYSICAL HARM.

{¶ 27} In support of this assignment of error, Barnes contends that the trial court erred in instructing the jury on the "serious physical harm" element of felonious assault.

{¶ 28} As relevant to this appeal, felonious assault is defined as follows:

(A) No person shall knowingly do either of the following:

(1) Cause *serious physical harm* to another or to another's

- 7 -

unborn;

…

(Emphasis added.) R.C. 2903.11(A).

{¶ 29} Another statute, R.C. 2901.01(A)(5), defines "serious physical harm" as used in the felonious assault statute. As relevant to this case, the statute defines "serious physical harm" as:

> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
>
> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
>
> (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C 2901.01(A)(5). In the case before us, the parties agreed to omit the (a) and (b) definitions from the jury instructions because those provisions' references to mental illness and physical harm carrying a substantial risk of death were not relevant to the state's case against Barnes.

{¶ 30} Typically, a jury instruction on felonious assault (under the [A][1] subsection) simply defines the "serious physical harm" element by referring to R.C. 2901.01(A)(5). *See Ohio Jury Instructions*, CR § 503.11(A) (Rev. Dec. 11, 2010). But when the parties discussed the felonious assault jury instruction with the court, the state requested that the court add the following language derived from *State v. McMurray*, 2021-Ohio-3562 (12th Dist.) to the standard jury instruction:

> Where injuries to the victim are serious enough to cause her to seek medical treatment, the finder of fact may reasonably infer that the force exerted on the victim caused serious

physical harm. Where the assault causes a bone fracture, the element of serious physical harm has been met.

The court asked Barnes' defense counsel if she wanted to comment on the state's proposed language. Defense counsel replied, "Not at this time, Your Honor," and raised no other objections to the state's proposed language. As a result, the version of the felonious assault jury instruction given to the jury quoted R.C. 2901.01(A)(5)(c), (d), and (e) to define "serious physical harm," but also included the additional language proposed by the state and quoted above.

{¶ 31} In support of his first assignment of error, Barnes argues that the jury instructions provided by the court effectively decided the issue of serious physical harm and removed that element from the jury's determination. Barnes argues that this error deprived him of due process of law by failing to require the state to prove every element of the offense beyond a reasonable doubt.

**1. Jury Instructions and Standard of Review**

{¶ 32} "A trial court has the duty to instruct the jury as to the applicable law on all issues presented in the case that are supported by the evidence." *Enderle v. Zettler*, 2006-Ohio-4326, ¶ 35 (12th Dist.). A trial court must "fully and completely give jury instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact-finder." *State v. Davis*, 2016-Ohio-1166, ¶ 27 (12th Dist.).

{¶ 33} Jury instructions are matters that are left to the sound discretion of the trial court. *State v. Brannon*, 2015-Ohio-1488, ¶ 20 (12th Dist.). Moreover, "this court may not reverse a conviction based upon faulty jury instructions unless it is clear that the jury instructions constituted prejudicial error." *State v. Grimm*, 2019-Ohio-2961, ¶ 26 (12th Dist.). Therefore, when reviewing a trial court's jury instructions, this court must affirm a

conviction if the trial court's jury instructions, when taken in their entirety, "'fairly and correctly state the law applicable to the evidence presented at trial.'" *State v. Mott*, 2023-Ohio-2268, ¶ 18 (12th Dist.), quoting *State v. Davis*, 2016-Ohio-1166, ¶ 28 (12th Dist.).

{¶ 34} Crim.R. 30(A) provides that an objection to a jury instruction (1) must be specific and (2) must be made before the jury retires to consider its verdict. The purpose of these two requirements is to bring any error to the attention of the trial court so it may provide proper instructions before the jury commences deliberations and to provide a complete record for appellate review. *State v. Rhodus*, 2023-Ohio-3678, ¶ 13 (12th Dist.), citing *State v. Glover*, 2017-Ohio-7360, ¶ 51 (12th Dist.). A party's failure to comply with Crim.R. 30(A) waives all but plain error. *Id.*

{¶ 35} Pursuant to Crim.R. 52(B), "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." That rule "places three limitations on a reviewing court's decision to correct an error not raised before the trial court." *State v. Fuell*, 2021-Ohio-1627, ¶ 70 (12th Dist.), citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68. "First, an error, 'i.e., a deviation from a legal rule,' must have occurred." *Fuell* at *id.*, quoting *Barnes* at 27. "Second, the error complained of must be plain, i.e., it must be 'an "obvious" defect in the . . . proceedings.'" *Id.* Stated otherwise, the error must be fundamental, palpable, and obvious on the record such that it should have been apparent to the court without an objection. *State v. Barnette*, 2013-Ohio-990, ¶ 30 (12th Dist.). "Third, the error must have affected 'substantial rights.'" *Fuell* at ¶ 70, quoting *State v. Martin*, 2018-Ohio-3226, ¶ 28. This means the error must have affected the outcome of the proceedings. *Barnes* at 27. An appellate court will take notice of plain error with "utmost caution, under exceptional circumstances and only to

prevent a manifest miscarriage of justice." *State v. Baldev*, 2005-Ohio-2369, ¶ 12 (12th Dist.).

**2. Analysis of "Seeking Medical Treatment" Instruction**

{¶ 36} As stated above, the court instructed the jury that, "Where injuries to the victim are serious enough to cause her to seek medical treatment, the finder of fact may reasonably infer that the force exerted on the victim caused serious physical harm."

{¶ 37} At first blush this "seeking medical treatment" jury instruction may not appear problematic. This instruction informed the jurors that they "*may* reasonably infer" from the victim's seeking medical treatment that the victim suffered serious physical harm. (Emphasis added.) The use of the word "may" indicated that the instruction was permissive, not mandatory. *State v. Getsy*, 84 Ohio St.3d 180, 196, 1998-Ohio-533. That is, the language did not *require* the jurors to find serious physical harm merely because Paige sought medical treatment. And broadly speaking, the "seeking medical treatment" instruction's language roughly corresponds with the language of R.C. 2901.01(A)(5), in that a person who suffered harm that is serious enough to merit seeking medical treatment may have experienced an incident of harm that meets one or more of the various alternative definitions in the statute.

{¶ 38} But there is no language in R.C. 2901.01(A)(5)(c) thru (e) that refers to seeking medical treatment, or whether seeking medical treatment leads to a reasonable inference of "serious physical harm." Moreover, it is self-evident that seeking medical treatment does not, by itself, establish serious physical harm. For instance, a victim who was not harmed to the degree of "serious physical harm" could and may seek medical treatment for mere "physical harm," a lesser form of harm described in R.C.

2909.01(A)(3). But by stating that the inference that merely seeking medical treatment establishes "serious physical harm" is a reasonable one, the instruction suggested to the jurors that they should equate seeking medical treatment as proof of serious physical harm. This did not "fairly and correctly state the law" because under a different set of facts, the conclusion that seeking medical treatment equates with serious physical harm as defined in R.C. 2901.01(A)(5) could be incorrect. We therefore find that the "seeking medical treatment" language was too suggestive of the result for purposes of instructing a jury.

{¶ 39} In sum, the "seeking medical treatment" jury instruction language is not per se prejudicial in that it did not *require* the jurors to find serious physical harm simply based on the fact that Paige sought medical treatment, but the phrasing is still unnecessarily suggestive and we find that it was error to instruct the jurors with this language. The court should not have added the "seeking medical treatment" language to its reference to the R.C. 2901.01(A)(5) definitions of serious physical harm.

### 3. Analysis of "Bone Fracture" Instruction

{¶ 40} As stated above, the trial court also instructed the jury that "Where the assault causes a bone fracture, the element of serious physical harm has been met." This "bone fracture" instruction is even more problematic than the "seeking medical treatment" instruction because while the "seeking medical treatment" instruction was permissive, the language in the "bone fracture" instruction is mandatory. That is, if the state's evidence established that Paige had a broken bone, then the instruction *required* the jury to find serious physical harm.

{¶ 41} While it is more than likely that the breaking of a bone would constitute "serious physical harm" under multiple definitions set forth in R.C. 2901.01(A)(5), the jury is still tasked with deciding whether the state has met its burden of proof on that element based on the statutory definitions and the evidence presented at trial. Here, because the state's evidence was that Paige's arm was broken, the court's "bone fracture" jury instruction required the jury to find "serious physical harm" regardless of whether that fact (Paige's broken bone) met the statutory definition. While highly unlikely, it is at least theoretically conceivable that a broken bone might not meet the statutory definition of serious physical harm. Were we to approve the "bone fracture" instruction, we would in effect add a new definition of "serious physical harm" to R.C. 2901.01(A)(5), but we do not have this authority. *Gabbard v. Madison Local School Dist. Bd. Of Edn.*, 2021-Ohio-2067, ¶ 13 ("we may neither add to nor delete from the statutory language."). The General Assembly could have defined a "bone fracture" as an example of "serious physical harm," but it did not do so, choosing instead to provide five alternative definitions. We therefore conclude that the trial court erred in giving the "bone fracture" jury instruction.

### 4. State's Reliance on *State v. McMurray*

{¶ 42} The state points out that it relied on our opinion in *State v. McMurray*, 2021-Ohio-3562 (12th Dist.), when it requested that the trial court add the "seeking medical treatment" and "bone fracture" language to the "serious physical harm" jury instruction. It is true that in *McMurray*, we stated, "Where injuries to the victim are serious enough to cause him to seek medical treatment, the finder of fact may reasonably infer that the force exerted on the victim caused serious physical harm as defined by R.C. 2901.01(A)(5)." *Id.* at ¶ 14. We also stated, "where the assault causes a bone fracture, the element of

serious physical harm is met." *Id.*

{¶ 43} But the state's reliance on *McMurray* is misplaced in the context before us. *McMurray* involved a review of the sufficiency and weight of evidence supporting an offense and did not involve an assignment of error concerning jury instructions. 2021-Ohio-3562 at ¶ 9-19. And the case cited by *McMurray* in support of its statement about seeking medical treatment, *State v. Tolle*, 2015-Ohio-1414 (12th Dist.), held that a police officer's right-arm fracture that placed him in a cast for approximately five months constituted serious physical harm and the court did not abuse its discretion in refusing to instruct on the lesser-included offense of assault. *Tolle* at ¶ 13-14. Thus, neither *McMurray* nor *Tolle* suggest that a trial court may instruct a jury, *as a matter of law*, that a victim's merely seeking medical treatment or receiving a bone fracture *necessarily* establish the "serious physical harm" element under the felonious assault statute.

### 5. Prejudice

{¶ 44} Having found error, we turn to whether Barnes has established prejudice. Under a plain error review, Barnes has the obligation to demonstrate that, but for the error, the outcome of the proceedings would have changed. *Barnes*, 94 Ohio St.3d at 27. Yet Barnes does not clearly argue plain error in his appellate brief. That is, he does not explain how, in the absence of the challenged instructions, the outcome of trial would have changed. Barnes does contend that he was deprived of due process of law and cites *State v. Stacy*, 2003-Ohio-3695, (12th Dist.) in support of that due process argument.

{¶ 45} *Stacy* involved the complete failure of a court to instruct the jurors on an element of an offense. *Id*. at ¶ 7. We held that this failure "deprived appellant of his right to have the jury properly instructed of the crime for which he was actually being tried, and

- 14 -

the essential elements of that crime." *Id*. But in Barnes' case, the jurors were instructed on the essential elements of the offense of felonious assault. Barnes' (less-than-clearly stated) prejudice argument is that the additional, erroneous instructions discussed above caused his trial to be fundamentally unfair and deprived him of due process of law.

{¶ 46} At trial, Barnes never challenged the serious physical harm element of the felonious assault count. Barnes' defense focused on his claim that Paige was lying about him attacking her, and his claim that her injuries were caused by falling from a tow truck. The felonious assault count hinged on whether the jurors believed Paige, or instead, believed Barnes' claim that her injuries were accidental—not on whether Paige suffered serious physical harm.

{¶ 47} That Barnes did not defend against the state's evidence related to the serious physical harm element is unsurprising. The evidence that Paige suffered serious physical harm was overwhelming. Paige described the "excruciating" pain caused by the bone break, which lasted all night. She described how she could not move her arm after the attack and that it resulted in both permanent and temporary incapacity in the use of her arm. Even three months after the attack, she remained in pain from the break and had only limited use of her arm. Based on the record before us, we find no reasonable probability that jurors would not have found serious physical harm in the absence of the challenged instructions. We find no prejudice, and thus no plain error.

### 6. Arguments Not Properly Raised or Argued in Briefing

{¶ 48} We must address two remaining issues regarding Barnes' first assignment of error.

**{¶ 49}** First, after filing his appellate brief, Barnes filed a notice of supplemental authority to present at oral argument. The notice suggested that Barnes would argue that what occurred in his case amounted to structural error in his trial. Barnes' supplemental authority was not *new* or intervening authority, but a citation to a United States Supreme Court case from 1993 and an Ohio Supreme Court case from 2022. Barnes did not make any argument related to structural error in his appellate brief, and as such, we disregard this structural error argument. *See* App.R. 12(A)(2); App.R. 16(A)(7).[3]

**{¶ 50}** Second, in the conclusion of his discussion of his first assignment of error, Barnes states the following:

> Alternatively, trial counsel was ineffective for failing to object [to the "serious physical harm" jury instruction]. *Strickland v. Washington*, 466 U.S. 668 (1984). There is no reasonable tactic in permitting a charge that alters an offense element, reduces the State's burden, and removes an element from the jury's consideration. *Id.*

App.R. 12(A)(2) and 16(A)(7) required Barnes to separately argue each assignment of error. Barnes did not assign error based on ineffective assistance of counsel. Therefore, we do not consider his brief reference to ineffective assistance of counsel claim in his discussion of his assignment of error concerning error in jury instructions. But even if we had considered this argument, we note that our finding of no prejudice with respect to Barnes' first assignment of error would be outcome determinative of the issue of ineffective assistance of counsel, which requires a finding of prejudice.

---

3. App.R. 12(A)(2) provides that an appellate court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." In turn, App.R. 16(A)(7) requires an appellant's brief to include an argument containing the appellant's contentions with respect to each assignment of error presented for review and "the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."

{¶ 51} We overrule Barnes' first assignment of error.

## B. Error in the Admission of Evidence

{¶ 52} Barnes' second assignment of error states:

THE STATE IMPROPERLY ELICITED THE VICTIM'S HEARSAY STATEMENT TO THE DETECTIVE.

{¶ 53} In support of this assignment of error, Barnes argues that the trial court committed prejudicial error by admitting two hearsay statements into evidence.

{¶ 54} At trial, the prosecutor asked Paige if she recalled telling the deputy who interviewed her at the hospital to be on the lookout for "anything" in the loft. Paige stated she could not recall. The prosecutor then asked Paige if she recalled telling the deputy to be on the lookout for a gun. Barnes' defense counsel objected, asserting that Paige had already stated that she could not recall telling police to be on the lookout for "anything" and that the prosecutor was attempting to improperly refresh her recollection. The court overruled the objection. Barnes' counsel did not object on hearsay grounds.

{¶ 55} The prosecutor then repeated his question as to whether Paige recalled telling the deputy to be on the lookout for a gun. Paige responded that she recalled warning police about "guns on the premises" but only because Barnes was acting "crazy" and she did not want them to get shot.

{¶ 56} During Deputy Brown's testimony, he stated that Paige told him to "let the other units know to be careful, that [Barnes] did have a gun up in the sleeping area." There was no objection to this testimony.

{¶ 57} In support of his second assignment of error, Barnes contends that Paige's statement about what she told the interviewing deputy about "guns on the premises" and Deputy Brown's testimony about what Paige told him were inadmissible hearsay.

**{¶ 58}** We review the admission of objected-to evidence using the abuse of discretion standard. *State v. Speaks*, 2024-Ohio-15, ¶ 60 (12th Dist.). But plain-error review applies here because Barnes did not raise a hearsay objection to either Paige's or Deputy Brown's testimony. Barnes did object to Paige's testimony but only on the basis of a claim of improper refreshing of recollection—a basis she does not argue in this appeal. This was insufficient to avoid plain error review of the argument Barnes now raises on appeal. *See State v. Ammon*, 2022-Ohio-1902, ¶ 42 (9th Dist.) (explaining that specific arguments not raised in the trial court are forfeited and plain error applies with regard to those arguments, even when defendant objected on a different basis or objected without explanation).

**{¶ 59}** Assuming without deciding that both statements were hearsay and were not otherwise admissible, we cannot find that Barnes has established plain error. Barnes claims that these alleged hearsay statements were prejudicial because there was no other evidence presented by the state that the pistol found in the loft was Barnes' pistol. The record belies this argument.

**{¶ 60}** The evidence presented at trial was that the pistol was recovered in the loft in the garage where Barnes lived, kept his personal effects (including photographs of himself with his deceased mother), and to which he had a key. Furthermore, the pistol was found on a nightstand next to the bed in which Barnes slept. Thus, there was evidence supporting the finding that Barnes possessed the pistol, even apart from Paige's and Deputy Brown's hearsay statements. We cannot find any reasonable probability of a changed outcome but for the admission of the challenged statements. Barnes has not demonstrated plain error. *Barnes*, 94 Ohio St.3d at 27.

**{¶ 61}** We overrule Barnes' second assignment of error.

### III. Conclusion

**{¶ 62}** The trial court's jury instructions were erroneous but did not result in prejudice at trial or a due process violation. Nor has Barnes established plain error in the admission of alleged hearsay statements.

**{¶ 63}** Judgment affirmed.

PIPER and M. POWELL, JJ., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Matthew R. Byrne, Presiding Judge

/s/ Robin N. Piper, Judge

/s/ Mike Powell, Judge